PORT RICHMOND AND BERGEN POINT FERRY COMPANY, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLD-ERS OF THE COUNTY OF HUDSON.

Submitted July 8, 1910—Decided November 5, 1910.

The questions in this case held to be controlled by the decision of the Court of Errors and Appeals in *Freeholders* v. *State*, 4 *Zab.* 718, and *New York Central and Hudson River Railroad Co.* v. *Freeholders of Hudson*, 47 *Vroom* 664.

On *certiorari*.

Before Justices PARKER and BERGEN.

For the prosecutor, *Frank Bergen*.

For the defendant, *John Griffin*.

The opinion of the court was delivered by

PARKER, J.  This writ of *certiorari* brings up the same two sets of resolutions that were passed upon by the Court of Errors and Appeals in the case of *New York Central and Hudson River Railroad Company* v. *Freeholders of Hudson*, 47 *Vroom* 664.  The prosecutor owns and operates a ferry between Bergen Point, the southern extremity of Hudson county, in this state, and Port Richmond, on Staten Island, in the State of New York.  The first resolution of the board of freeholders passed under and by virtue of the act of 1799, referred to in the case just cited, after a somewhat lengthy preamble, resolves "That in the exercise of its discretion and pursuant to the direction of said last mentioned act this board does hereby fix the rates of ferriage to be charged by the aforesaid companies (prosecutor being one of them) for the transportation of foot passengers from the county of Hudson to the terminal of said ferries in the State of New York, and from said terminal returning to the county of

Hudson, at the rate of six cents for each adult person for the round trip, and four cents for each person under ten years of age," &c.   The second resolution is similar in form except that the rate is fixed at three cents and two cents respectively for adults and children "for the transportation of foot passengers from the county of Hudson by said ferries to the terminal of said ferries in the State of New York."

The case is submitted on briefs; and counsel for prosecutor concedes in his brief that this case, excepting in one particular mentioned by him, is controlled by the decision just cited.   This particular, which, as he claims, differentiates this case from the New York Central case, is that whereas in that case the prosecutor was operating in right of a New Jersey ferry company, incorporated in 1852; and, consequently, as he says, subject to all rights of the freeholders to fix ferry rates that were vested in them by the Ferry act of 1799, in the present case the prosecutor is a corporation chartered in the State of New York, originally in 1857, and by that charter and by subsequent enactments in that state is authorized to charge ferry rates considerably in excess of those prescribed in the resolutions now attacked.   His point, if we understand it correctly, is that the fact of incorporation in New York and the fact of rates having been fixed by the New York charter, gave rights to the prosecutor that are paramount to and unaffected by our legislation, although one terminus of the ferry is within the jurisdiction of this state.

We deem this point to be fully covered by decisions in this state which are controlling on this court.   The question elaborately discussed in both the prevailing and dissenting opinions in New York Central Railroad Co. *v.* Freeholders was whether the court should be governed by the old case of *Freeholders* v. *State,* in 4 *Zab.,* upholding the jurisdiction of the freeholders, or regard that case as overruled by later decisions of the United States Supreme Court and hold on their authority that the regulation of interstate ferries is a matter of interstate commerce to be regulated by Congress. The judgment of the court was that State *v.* Freeholders was

still controlling; and in view of that judgment, we are pointed to the opinion in the former case for an exposition of the law on the subject. An examination of the opinion shows that the question of conflicting jurisdiction was fully recognized and discussed. On page 722 of 4 *Zab.* Mr. Justice Elmer observes with regard to the old ferries between Philadelphia and Camden, "the ferries on each side were regulated and governed by the laws of the state in which such owner or keeper resided. Sail and row boats, and flats or scows, were the vessels in use, as is manifest from the act itself." He continues:

"Applying the language of the act to the state of things then existing, and giving to that language its common and ordinary signification, as is the rule in the interpretation of statutes, where nothing indicates a different intention, I think it cannot be doubted, that in treating of ferries, the legislature had in view the ferry establishment, and not the way across the water. The act meant to authorize, and did authorize, the boards of freeholders in the several counties, to regulate the fares to be taken at the ferry situate within that county; *that is, at the ferry establishment of the owner or keeper.* The rates, when established, apply to and are obligatory upon such owner or keeper, who is required by the second section to put up and maintain, where such ferry is kept, a post with a table of rates, fairly printed, written or painted. Even if it might happen, upon this construction, that one board might establish one set of rates at one side, and another board another set on the other side, or that each state might have different regulations, where the ferry was over one of the rivers forming the boundary between this and another state, I do not see that there would be any important conflict of authority. Each power regulated what was done within its own jurisdiction, and left to others to regulate what was done in theirs. Existing ferries between this state and New York, and this state and Pennsylvania, are now, in numerous instances, regulated by the laws of this state, without the occurrence of any difficulty."

He then cites several ferry enactments of the seventeenth century and proceeds as follows:

"Without deeming it necessary to go over and specially refer to the different acts noticed in the opinion of Judge Carpenter, delivered in this case, it is sufficient to say that they show a course of legislation, commencing in 1714, and continued till near the passage of the act of 1799, by which the ferries over the waters dividing this state from the adjoining states, were regulated by the laws of New Jersey, in those cases *where ferry establishments were within this state.* These laws operated upon the ferry owners and keepers, *when acting and receiving fares within this state,* and were superseded by the act now in question, which is general in its terms and applies to all ferries in the state, and repeals all prior acts within its purview. One of the objects of the act was to vest in the local boards, then newly organized and of a popular character, the power previously exercised by the legislature. To effect this object, the word ferries must be interpreted to mean, what in those laws it had obviously included, ferries, the owners or keepers of which resided in this state, *or which had one of their termini where fares were demanded* in this state, and not merely ferries in the technical meaning of an entire passage across a river or other water.   *   *   * I am satisfied that the New Jersey statute applies, in like manner, to all ferries having one terminus in the state, and consequently that the board of freeholders of the county of Hudson has power to fix the rates of those between this state and the city of New York."

We have italicized certain parts of this quotation which particularly show that the court recognized no distinction between citizens of New Jersey and of other states as proprietor, and while not denying to other states full jurisdiction to fix ferry rates to be collected at the termini in those states, reserved to this state the right of control of rates to be collected at a terminus within this state. Such is the law as laid down by the Court of Errors and Appeals in 1853 and reaffirmed by the same court in 1909, and the extract quoted

above seems to us fully to cover the point now made by prosecutor. Whether the proprietor of the ferry, if a natural person, be a citizen of New Jersey or New York, or if a corporation, be chartered by our state or another state, is immaterial. The rates authorized by the New York charter to be collected by the corporation in question are no doubt controlling, as to its fares collected in that state. But when that New York corporation comes over to New Jersey and sets up a ferry terminus here, it necessarily does so subject to our laws, and cannot import a New York statute to justify the collection here of charges that our laws forbid. It is the maintenance of a ferry terminus within this state, and not the place of birth or residence of the proprietor of the ferry, that gives the jurisdiction to fix rates to be collected within this state. The same idea will, we think, be found in the case of *Columbia Bridge Co.* v. *Geisse,* 9 *Vroom* 39, 43.

The further question is stirred but not discussed in prosecutor's brief, as to the right of this state to regulate round trip fares collected in this state as distinguished from fares for a single trip from New Jersey to New York. All that need be said on this point is that it is covered by the decision in the New York Central case, even if not fully discussed in the opinion; for one of the two sets of resolutions related to a single trip and the other set to a round trip. Both were recited in the opinion of the Court of Errors and Appeals in 47 *Vroom* 664; and both sets of resolutions were affirmed, without discrimination.

These resolutions, therefore, as brought up by the prosecutor in the present case, on the authority of *Freeholders* v. *State, supra,* and *New York Central Railroad Co.* v. *Freeholders, supra,* should be affirmed.